## ATTACHMENT A: STIPULATED FACTS
### United States v. Yanick Eyong

*The parties hereby stipulate and agree that if this case proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. They agree that these are not all of the facts that would be proved if this case proceeded to trial.*

At all relevant times, the Defendant, **YANICK EYONG** ("**EYONG**"), was a resident of Bowie, Maryland. **Aldrin Fon Fomukong** ("**Fomukong**") was a resident of Greenbelt, Maryland and **Nkeng Amin** ("**Amin**") was a resident of Beltsville, Maryland.

"Drop Accounts" were bank accounts opened or controlled by **EYONG** and his co-conspirators that were used to receive money from victims. On or about June 17, 2017, **EYONG** opened Bank of America account x0042 ("BOA x0042") in the name of CL Escrow LLC. On or about June 19, 2017, **EYONG** opened TD Bank account x3845 ("TD Bank x3845") in the name of CL Escrow LLC.

Victim G was a business located in Massachusetts. Victim K was a resident of California.

Between at least on or about June 15, 2017 through in or about July 2017, in the District of Maryland and elsewhere, **EYONG** did knowingly combine, conspire, and agree with **Fomukong, Amin,** and other persons to conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity—to wit, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349—while knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity and (a) with the intent to promote the carrying on of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and (b) knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

It was part of the conspiracy and scheme to defraud that **EYONG** and his co-conspirators opened and/or managed the Drop Accounts in order to receive millions of dollars into those accounts from the Victims. It was further part of the conspiracy and scheme to defraud that **EYONG** and his co-conspirators caused the Victims to use the wires to transfer money to the Drop Accounts. It was further part of the conspiracy and scheme to defraud that **EYONG** and his co-conspirators disbursed the money received from the Victims into the Drop Accounts by using wires to transfer money to other accounts, by initiating account transfers to other accounts at the same bank, by withdrawing sums of money, by obtaining cashier's checks, and by writing checks to other individuals or entities, all to promote wire fraud conspiracy and other criminal conduct, and to hide true ownership and disguise the nature, source, and control of those assets.

In furtherance of the conspiracy, and to effect the objects thereof, **EYONG** committed and caused to be committed the following acts, among others, in the District of Maryland and elsewhere.

*Victim G*

On or about June 15, 2017, **EYONG** registered the fictitious business CL Escrow LLC in Maryland and provided the business registration documents to **Amin**. On or about June 16, 2017, **Amin** provided **Fomukong** the business registration documents. On or about June 17, 2017, **Eyong** opened BOA x0042. On or about June 21, 2017, **Fomukong** provided a co-conspirator the information for BOA x0042, including the bank name, account number, account holder address, and business name (CL Escrow). On or about June 21, 2017, **Fomukong** provided **Amin** with Victim G's name, "reason for wire," and "reason for cashier's check." On or about June 21, 2017, a co-conspirator caused Victim G to wire $6,000,000 into BOA x0042, controlled by **EYONG**.

On or about June 21, 2017, after receiving the $6,000,000 wire transfer from Victim G into BOA x0042, **EYONG** made a $2,350,000 wire transfer to a bank account located in South Africa in the name of Business 5. On or about June 22, 2017, **EYONG** obtained three cashier's checks from BOA x0042, each for $95,000 and in the name of Business 6. Then, on or about June 23, 2017, **EYONG** obtained three additional cashier's checks from BOA x0042: a $95,000 check in the name of Individual 7, a $95,000 check in the name of Business 6, and a second $95,000 check in the name of Business 6.

*Victim K*

After **EYONG** registered the fictitious business CL Escrow LLC in Maryland, **EYONG** opened TD Bank x3845 on or about June 19, 2017. On or about July 13, 2017, a co-conspirator caused Victim K to wire $292,830.10 into TD Bank x3845, controlled by **EYONG**. On or about July 14, 2017, **Fomukong** provided **Amin** an image of wire instructions related to a wire in the amount of $292,830.10 from Victim K to TD Bank x3845. On or about July 14, 2017, after receiving the wire transfer from Victim K into TD Bank x3845, **EYONG** made a $5,000 cash withdrawal from a TD Bank branch in Beltsville, Maryland. On or about July 14, 2017, **EYONG** made a separate $5,000 cash withdrawal from TD Bank x3845 from a TD Bank branch in Laurel, Maryland. On or about July 14, 2017, **EYONG** obtained a $58,500 check made out to Business 3, which **Fomukong** used to purchase a 2014 black colored Land Rover bearing VIN: SALGS2WF5EA158828.

In total, the actual loss to Victims G and K caused by **EYONG** and his co-conspirators was $693,237, and the intended loss was $6,292,830. A substantial part of the fraudulent scheme was committed from outside the United States, specifically South Africa. In addition, the scheme involved sophisticated laundering, in that **EYONG** and his co-conspirators created fictitious entities; used shell companies; layered the monetary transactions into multiple levels in order to make them appear legitimate; and used offshore financial accounts (namely, accounts located in Cameroon and South Africa, among others) to complete the scheme. **EYONG** was a minor participant in the criminal activity, based on the factors set forth in United States Sentencing Guidelines § 3B1.2, application note 3(C).

\* \* \*

I have read this statement of facts and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

06/23/18
Date

_____ y.e 7/16/18
Yanick Eyong

I am Yanick Eyong's attorney. I have carefully reviewed the statement of facts with him.

23 May 18
Date

_____ 16 Jul 18
Steven Wrobel, Esq.

12